[PHILADELPHIA, JANUARY 21st, 1837.]

## ❘ MANLEY *against* DUPUY.

2 Wh 162
e 26 SC 651

IN ERROR.

The circumstance of the lessor having distrained upon the *goods of a* sub *lessee,* or of the assignee of the lessee, found upon the premises, for rent due to him by the lessee, does not discharge the lessee from personal liability to the lessor for rent afterwards accruing.

ERROR to the Court of Common Pleas for the city and county of Philadelphia.

In the court below, John Dupuy brought an action of *assumpsit* against Reuben Manley, to recover one quarter's rent of a house in the city of Philadelphia, alleged to be due in August, 1835.   The cause came on for trial on the 17th of May, 1836, when the plaintiff

(Manley *v.* Dupuy.)

gave in evidence a written agreement, of which the following is a copy, to wit:

"I promise to pay to John Dupuy or his legal representatives, *fifty dollars per quarter of a year* for the rent of his house No. 106, Cedar street, rent to *commence on the* 26*th of February,* 1830. Agreed to *this* 4*th of March,* 1830. Reuben Manley wishes to have an opening in the wall between No. 104 and 106, about the size of a common light glass; he promises to repair the same when required."

"REUBEN MANLEY," (signed.)

The plaintiff also produced William Stokes as a witness, who swore as follows.

"I was called upon by Dupuy a year or two ago to make a distress *for rent in* 1834. I did make a distress for $50 for one quarter, on goods in that house, as the property of Reuben Manley. I seized the goods as his property. Mr. Manley occupied the house No. 104, not No. 106. Persons named Montegu occupied the house No. 106. They said they owed no rent; and sent for Manley. Manley came and told them "You shan't have trouble; I'll release you from responsibility." The tenant and Manley were both by. Manley said 'Don't trouble yourself; I'll take the goods off from your shoulders.' The tenant said 'our rent to Mr. Manley is not due.' The first distress was in March, 1834; the next distress was in June, 1834, of Montegu's goods. Mr. Montegu paid me the money. There were four, five or six distresses regularly after this. Montegu never paid a quarter's rent without distress. The bill was made out against Manley. He said 'you know where there is plenty of goods—go get the money there.' Montegu has gone off."

The counsel for the defendant then requested the judge to charge the jury—

1. That the removal of Manley from the premises, was under the circumstances, sufficient proof of the termination of the tenancy.

2. That the receipt of money (rent) by the plaintiff from Montegu, the occupant of the house, after Manley had so removed from the premises, and after the plaintiff had gone to the premises to distrain for five or six successive quarters, was such a recognition of Montegu as his tenant as to discharge Manley from liability.

3. That the defendant telling Montegu he would release him from responsibility, was no recognition on the part of the defendant of the continuance of his lease."

The judge however charged the jury:

" 1. That the removal of the defendant was not conclusive proof of the termination of his tenancy.

2. That the receipt by the plaintiff of money (rent) from Montegu,

(Manley *v.* Dupuy.)

the occupant of the premises, after going to the premises to distrain, might not be a recognition by the plaintiff of Montegu as his tenant, so as to discharge Manley from liability.

3. That Manley telling Montegu he would release him from responsibility, was under the circumstances, a declaration from which they might infer the recognition by him of the continuance of the lease.''

The jury found a verdict for the plaintiff, and the defendant removed the record to this court, and assigned the following errors, viz.

1. " The court erred in not charging the jury that the removal of Manley, the plaintiff in error, was under the circumstances, sufficient proof of the termination of the tenancy.

2. The court erred in charging the jury that said removal was *not conclusive* proof of the termination of said tenancy, the counsel for plaintiff in error requesting him to charge that it was sufficient proof of the termination of the tenancy.

3. The court erred in not charging the jury that the removal of the plaintiff in error from the premises, and the plaintiff below receiving rents from Montegu, the occupant of the house, after distraining for five or six successive quarters upon Montegu's goods, subsequently, was such a recognition by him of Montegu as his tenant, as discharged Manley from liability.

4. The court erred in charging the jury that the receipt by the plaintiff below of money (rent) from Montegu, after going to the premises to distrain, might not be a recognition by the plaintiff below of Montegu as his tenant.

5. The court erred in not charging the jury that Manley telling Montegu he would release him from responsibility, was not under the circumstances, such a declaration from which they might infer the recognition by Manley of the continuance of his lease.

6. The verdict was not supported by the evidence and law of the case."

Mr. *Oakford,* for the plaintiff in error, cited *Comyn's Land. and Ten.* 305. *Lesley* v. *Randolph,* (4 *Rawle,* 123.) *Bradby on Distresses,* 78. *Panton* v. *Jones,* (3 *Campbell,* 372.) 1 *Hen. Blackst.* 311. 2 *Barn. & Ald.* 119. 5 *Barn. & Ald.* 322. 2 *Campbell,* 505. 3 *Taunton,* 65. 4 *Taunton,* 407.

The case was not argued on the part of the defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—We think there is no error in the charge of the court below to the jury; nor in its answers to the points submitted by the counsel for the plaintiff in error, who was the defendant below. That the relation of landlord and tenant existed at one time between the plaintiff and the defendant, under an express written

(Manley *v.* Dupuy.)

contract, creating the same, is admitted; and the only question raised on the trial of the cause was, whether that had not been terminated by the acts of the parties merely, without any express agreement between them, or declarations made by either showing distinctly that it was so, or even that they wished it to be so. Manley, the plaintiff in error, by his agreement in writing, dated the 4th of March, 1830, promised to pay Dupuy, the defendant in error, or his legal representatives, fifty dollars *per* quarter of a year, for the rent of his house No. 106, Cedar street; rent to commence on the 26th of February, 1830. Now admitting this, as contended for by the plaintiff in error's counsel, to be only a letting by the quarter, and not for the year, still it gave to him such an interest in the premises as enabled him to underlet them if he chose: and the testimony certainly does go to show, that he did so to Montegu; and that Montegu was his tenant as much as four years after the commencement of his lease from the defendant in error. This would seem to have been so; because in March, 1834, when the first distress was made by the defendant in error, for rent in arrear, it is not easy to account for the conduct and declarations of the plaintiff in error to Montegu, upon any other ground than that the latter was his tenant, and being in possession of the house, was bound to pay rent to him for it, which then had not become payable, as Montegu said, though the plaintiff in error's rent, it would seem had, as he did not complain of the defendant in error's distraining, nor deny his right to do so for rent then claimed to be due to him; but on the contrary, promised Montegu that he would exonerate him and his goods from the payment of it; thus plainly intimating that he would settle or pay it himself, it being justly due to the defendant in error, but not from Montegu. If the plaintiff in error then, as the testimony would seem to show was the case, at the time he quitted the actual occupation of the house himself, leased it to Montegu, it would have been clearly wrong in the court to have charged the jury as requested by his counsel, that his removal therefrom was sufficient proof of the termination of his tenancy, or in other words, of his lease, under the defendant in error. The evidence undoubtedly rather went to show that Montegu was in the possession of the house under a contract with the plaintiff in error, and that there was no privity of contract between Montegu and the defendant in error; but that the privity of contract for the occupation of the house still continued between the plaintiff in error and the defendant in error, upon which the former might be rendered liable to the latter for the rent, as it became due, according to the terms of their original agreement.

But it has been argued, that because the defendant in error, as it is alleged, received four or five consecutive quarter's rent subsequently from Montegu, he thereby recognized him as his tenant, and discharged the plaintiff in error from all liability to pay any subsequent accruing rent; and that the court below ought to have given

it so in charge to the jury. From the testimony however, it does not appear that the defendant in error ever demanded his rent from Montegu, but on the contrary made out his bills for it as it became due against the plaintiff in error, which he placed in the hands of his bailiff, accompanied by a warrant of distress; that the bailiff called upon the plaintiff in error for the payment of these subsequent rents, when he told the bailiff "you know where there are plenty of goods—go and get the money there." The bailiff accordingly, it would seem, went to the leased premises, the only place to which he could go for a distress, where he found goods which he distrained for the rent; upon which Montegu, claiming the goods, paid the rent in order to relieve them from the distress, but never paid rent to the defendant in error otherwise. So far the evidence would rather go to show that the defendant in error always looked to the plaintiff in error as his tenant for the rent, as often as it fell due; and that the plaintiff in error when called on thus to pay it, never seems to have denied his liability as such to pay it; but merely intimated to the defendant in error or his bailiff, that he must go and collect it by distress, without even saying that Montegu ought to pay it. Seeing then the rent was to be collected by distress, the defendant in error had no choice of goods to distrain on, other than among those to be found upon the leased premises; and if sufficient were there to answer the amount of the rent due, it was not necessary that he should know, nor that he should inquire whose goods they were; whether they were the goods of the plaintiff in error, of Montegu, or of a third person who had never been in possession, nor occupied the leased premises for a moment, he had the right to distrain them for his rent, without knowing or being bound to know who was the owner of them. It would not therefore be reasonable that the mere circumstance of the defendant in error's having distrained upon goods that belonged to Montegu, for the rent that fell due while Montegu was in possession of the house, should *per se,* without its being so intended, have the effect of destroying the relation of landlord and tenant thereafter between the defendant in error and plaintiff in error, that had previously thereto existed between them; nor does it necessarily go to establish privity of contract between the defendant in error and Montegu, in regard to the occupation of the house; but merely to prove that Montegu, if he occupied the house during the time the rent distrained for, was claimed, was not a trespasser on the rights of the defendant in error, by his having occupied the house, and that he could not be so thereafter considered by the defendant in error; and this is the utmost extent to which the authorities, cited by the counsel for the plaintiff in error, go. It is therefore a misapprehension of the law, to suppose that the distress of the goods of a sub-lessee, or even of the assignee of the first lessee, by the first lessor for rent due to him from his immediate lessee, destroys all future privity of contract between them,

(Manley *v.* Dupuy.)

and consequently releases the first lessee from his future liability to his lessor for the rent, which may become due thereafter according to the terms of his lease.    See *Mills* v. *Auriol*, (1 *Hen. Bl.* 433.    S. C. 4 *Term Rep.* 94.)    *Boot* v. *Wilson*, (8 *East*, 311.)    As well might it be said that the distress of the goods of a third person found upon the leased premises, where the lessee had quitted the actual possession of them, but the owner of the goods distrained on for the rent, had never been in the possession nor had any connection with them, whatever, should have the effect of releasing the lessee from his liability to the payment of subsequently accruing rent; but this I apprehend will not be contended for.

Upon a careful examination of the evidence given on the trial of the cause, and the instruction of the court to the jury, contained as well in its charge as in its answers to the points submitted by the counsel for the plaintiff in error, we are of opinion that he has no good reason to complain, and that he was dealt with quite as favourably as he had any right to demand.    The judgment is therefore affirmed.

Judgment affirmed.